IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

RICKY JAVON GRAY, No. 1100057
       Petitioner,

v.                                                                                          Civil Action No. 1:11-cv-630

LORETTA K. KELLY, WARDEN,
Sussex I State Prison,
       Respondent.

**WARDEN'S OPPOSITION TO GRAY'S MOTION
FOR FUNDS TO OBTAIN MENTAL HEALTH EXPERT ASSISTANCE**

The Warden of Sussex I State Prison, by counsel, opposes Gray's motion for funds to obtain another mental health expert for the following reasons:

The appointment of experts is governed by 18 U.S.C. § 3599(f), which requires a showing that the requested expert's services are "reasonably necessary." The Fourth Circuit has held that an expert should be appointed "when a substantial question exists over an issue requiring expert testimony for its resolution and the defendant's position cannot be fully developed without professional assistance." *Wright v. Angelone,* 151 F.3d 151, 163 (4th Cir. 1998). Expert services are not "reasonably necessary" if the record, viewed in light of the forecasted evidence, would not entitle the petitioner to an evidentiary hearing on his claims, or if the petitioner would not be able to win on the merits regardless of the expert's findings. *Lawson v. Dixon*, 3 F.3d 743, 753 (4th Cir. 1993), *cert. denied*, 510 U.S. 1171 (1994); *Powell v. Kelly*, 492 F. Supp. 2d 552, 557 (E.D. Va. 2007), *aff'd*, 562 F.3d 656 (4th Cir. 2009), *cert. denied*, 130 S. Ct. 1281 (2010).

Allegations of what other experts years after the trial may think never can demonstrate ineffective assistance.  *See Wilson v. Green*, 155 F.3d 396, 401 (4th Cir.) (ineffectiveness not shown by a new expert's opinion obtained on habeas review), *cert. denied*, 525 U.S. 1012 (1998).  Accordingly, Gray cannot establish how appointing a post-trial expert, even if the expert made a new diagnosis, could establish that his trial counsel were ineffective.  The findings of the Supreme Court of Virginia that counsel's performance was not deficient and that Gray made no showing of prejudice cannot be rendered unreasonable by new opinions from an after-the-fact, hand-picked expert.

Gray's present motion describes his claim as alleging that his trial counsel "were ineffective for failing to investigate and present evidence to the jury of Gray's major mental health disorder, including Posttraumatic Stress Disorder ('PTSD'), and the relationship between his drug use, his crime, and his victimization and abuse as a child." (Mot. 2)  Gray's motion discusses a number of other allegations regarding Gray's family and childhood, but apparently only to support his allegation that he might suffer from PTSD. (Mot. 6-17).  The only specific need for expert assistance Gray argues is to "determine the status of Gray's mental health, and to evaluate Gray to determine *if* Gray suffered from a trauma disorder such as PTSD at the time he committed his crimes."  (Mot. 18, emphasis added).  Only the asserted possible PTSD diagnosis relates to any claim pending in this Court.

Gray argues that he sought expert assistance in the state habeas proceedings.  (Mot. 5).  In fact, Gray never argued in the Virginia Supreme Court that he needed expert assistance to establish his ineffective assistance claim.  Rather, Gray moved the Virginia Supreme Court to remand his case to the trial court generally "for discovery and expert assistance as necessary." Petition at 2.  He made no showing of any particularized need and even now he fails to identify where he made

any specific request that he needed the assistance of an expert to diagnose PTSD, or where he alleged any grounds in support of such a request.

Gray asked the Virginia Supreme Court to send the state habeas petition "to the circuit court so that he may seek discovery, obtain expert assistance as necessary, and present evidence in support of all of his claims for relief in this petition, pursuant to Va. Code § 8.01-654(C)(1), (2) & (3) and Va. S. Ct. Rules 5:7A(h) and 4:1(b)(1) & (5)." (See state habeas record, Gray's Motion for an Evidentiary Hearing at 4). Gray requested rehearing after the Virginia Supreme Court dismissed Gray's petition, but he did not argue that the Virginia Supreme Court had erred in not appointing any experts. Where Gray has not been diligent in requesting an expert in state court, he would be barred from asserting any claim based on a new expert opinion, and the expert cannot be "reasonably necessary." *Cf. Wright v. Angelone*, 151 F.3d 151, 164 (4th Cir.) (holding that the appointment of a new neurologist "would be futile" where petitioner could not show that the basis for the claim could not have been discovered earlier), *cert. denied*, 525 U.S. 925 (1998).

Gray nevertheless argues that in state court he was put "in a classic 'Catch-22,'" stating that the state court "denied Gray the assistance of an expert to support his claim, then based the dismissal of the claim on Gray's failure to present a *diagnosis* of PTSD, a major mental illness, from a qualified mental health expert." (Mot. at 2). Gray misstates the holding of the Virginia Supreme Court. It did not dismiss his claims "because Gray failed to obtain a diagnosis from a qualified mental health expert." (Mot. at 18). Rather, its analysis endeavored, as it does in any claim under *Strickland v. Washington*, 466 U.S. 668 (1984), "to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689. In reviewing an ineffective assistance of counsel claim, the

3

court "look[s] at counsel's conduct, not at the experts who aided counsel." *Spencer v. Murray*, 18 F.3d 229, 236 (4th Cir. 1994).

Gray already had the assistance of the experts to which he was entitled. In addition to the assistance of, and testimony from, Dr. Cunningham and Dr. Lisak, Gray's trial counsel had the benefit of expert evaluations from Dr. Evan Nelson, appointed as a mitigation expert pursuant to Virginia Code § 19.2-264.3:1, and Dr. Bruce Cohen, appointed to evaluate Gray's competence to stand trial and to provide a confidential report to the defense about Gray's sanity at the time of the offenses. Gray never has disputed the fact that his trial counsel did not have any evidence, at the time of trial, to establish that Gray suffered from PTSD. What they did have was an evaluation by Dr. Cohen, a qualified psychologist, who affirmatively found that there was *no* evidence of any extreme mental or emotional disturbance. (Resp. Exh. B. ¶ 17).[1]

The Supreme Court of Virginia rejected Gray's claim of ineffective assistance of counsel as follows:

> In another portion of claim (IX), petitioner alleges he was denied the effective assistance of counsel at the sentencing phase of trial because counsel failed to present any evidence that petitioner suffers from post-traumatic stress disorder (PTSD) as a result of his upbringing. In support of this claim, petitioner provides an affidavit from petitioner's case manager from 2004-05, which stated that dealing with PTSD issues was one of petitioner's goals. Petitioner also provided records that note that petitioner suffers from sleeping disorders and affidavits from Drs. David Lisak and Mark Cunningham that petitioner has symptoms of PTSD.

---

[1] In the state habeas case, the Warden attached the affidavit of Gray's trial counsel and true and correct copies of both evaluation reports as Respondent's Exhibits B, C, and D, respectively. The Clerk of the Supreme Court of Virginia advises that certified copies of its records of Gray's direct appeal, *Ricky Javon Gary v. Commonwealth*, Record No. 062659, and of Gray's state habeas corpus proceeding, *Ricky Javon Gray v. Warden*, Record No. 080524, were, at the Warden's request, sent by UPS to the Clerk of this Court on July 1, 2011, and signed for on July 5, 2011. The Clerk of this Court, however, has been unable to locate those certified copies. The Clerk of the Supreme Court of Virginia has agreed to re-send certified copies of its records in both cases. In the meantime, the Warden has attached copies of her state habeas Exhibits B, C, and D, to this pleading.

>       The Court holds that this portion of claim (IX) satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in *Strickland*. Petitioner fails to provide any evidence to show that he has ever been diagnosed with having PTSD by anyone qualified to make such a diagnosis. The record, including the affidavit of counsel, demonstrates that there was no admissible evidence that petitioner suffered from PTSD. Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

*Gray v. Warden*, 707 S.E.2d 275, 290 (Va. 2011).

To the extent Gray argues that it is reasonably necessary to authorize Dr. Lisak to evaluate him with respect to the balance of his claim: "the relationship between his drug use, his crime, and his victimization and abuse as a child," Gray fails in his burden.  The Virginia Supreme Court did not dismiss that portion of his claim of ineffective assistance for want of "a qualified mental health expert."  Gray's trial counsel in fact *did* present expert testimony to explain both the impact of Gray's drug use and the impact of his childhood abuse on his later life.  The Supreme Court of Virginia accepted that expert testimony at face value:

>       In another portion of claim (IX), petitioner alleges he was denied the effective assistance of counsel because counsel failed to present any expert testimony to explain petitioner's drug use and the impact it had on petitioner's "moral culpability and behavior." Petitioner claims that Drs. Lisak and Cunningham could have explained that petitioner's early use of drugs stemmed from either the abuse he suffered or from modeling the behavior of the adults in his life who were using drugs, that drugs become a primary motivator in the life of a traumatized child, and that PCP is a drug used by abuse survivors.
>
>       The Court holds that this portion of claim (IX) satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in *Strickland*. The record, including the affidavit of counsel and the trial transcript, demonstrates that Dr. Lisak's videotaped deposition was played for the jury. Dr. Lisak opined generally regarding the effects of physical and sexual abuse and substance abuse on children. Dr. Lisak also testified that he would not be surprised to learn after hearing about the experiences petitioner had as a child, that petitioner had murdered several people in a relatively short period of time. Dr. Lisak, however, had not personally evaluated petitioner. Furthermore, petitioner repeatedly told counsel that drugs were not to blame for his actions because petitioner knew what he was doing. Thus, petitioner has failed to

5

>   demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.
>
>   \* \* \*
>
>   In another portion of claim (IX), petitioner alleges he was denied the effective assistance of counsel because counsel failed to present expert testimony to aid the jury in assessing the mitigating evidence and petitioner's background and relating it to the impact it had on petitioner's "moral culpability." Petitioner contends that Dr. Cunningham could have provided testimony regarding petitioner's life experiences and his behavior by showing the jury studies and scientific literature on the effects petitioner's adverse background and substance abuse had on his behavior and development.
>
>   The Court holds that this portion of claim (IX) satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in *Strickland*. The record, including the affidavit of counsel and the trial transcript, demonstrates that Dr. Lisak's videotaped deposition played for the jury included his expert testimony regarding the relationship between childhood abuse and its later impact on the development of people and violence in men, the factors that would predict if a person would be violent, and the studies that have been done. Petitioner has failed to show that even if the information he contends Dr. Cunningham would have testified about were presented it would have resulted in petitioner receiving a different sentence than the one he received. Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

*Gray*, 707 S.E.2d at 290.

Gray's trial counsel had sound, strategic reasons for not presenting the experts who had evaluated Gray to opine regarding the effects of his drug use and childhood abuse. The evaluations by Dr. Nelson and Dr. Cohen would have been devastating to Gray's defense, as each expert acknowledged to Gray's trial counsel. (Resp. Exh. B. ¶ 16). Far from providing any mitigation, they confirmed the prosecution's worst picture of Gray as a dangerous criminal who gets his "kicks" out of hurting people, who took pleasure in murdering, and whose crimes are described as a combination killing spree, mass murder, and serial killing. (Resp. Exh. C at 12-13). Trial counsel had no reason to expect that any third or fourth expert – and none such would

have been appointed – given full access to Gray and his history, would have provided a more favorable report. Gray's trial counsel instead carefully crafted a strategy to get the best of both worlds: expert explanations that gave the jury ways to understand Gray's conduct as less culpable, without opening the door to his violent history. (Resp. Exh. B. ¶ 21). Gray's trial counsel simply were not obliged to seek even more opinions and diagnoses. *See Poyner v. Murray*, 964 F.2d 1404, 1419 (4th Cir.) ("The mere fact that his counsel did not shop around for a psychiatrist willing to testify to the presence of more elaborate or grave psychological disorders simply does not constitute ineffective assistance."), *cert. denied*, 506 U.S. 958 (1992).

Gray argues that "there is a reasonable likelihood that at least one juror, upon learning the powerful information only an expert could provide about the connection between Gray's history, background, and mental health disorder, would have rejected death as the appropriate penalty." (Mot. 20). This is a misleading argument. When assessing prejudice under *Strickland*, a reviewing court must presume that the jury acted according to law:

> An assessment of the likelihood of a result more favorable to the defendant must exclude the possibility of arbitrariness, whimsy, caprice, 'nullification,' and the like. A defendant has no entitlement to the luck of a lawless decision maker. … The assessment of prejudice should proceed on the assumption that the decision maker is reasonably, conscientiously, and impartially applying the standards that govern the decision. It should not depend on the idiosyncrasies of the particular decision-maker, such as unusual propensities toward harshness or leniency. Although these factors may actually have entered into counsel's selection of strategies and, to that limited extent, may thus affect the performance inquiry, *they are irrelevant to the prejudice inquiry*.

*Strickland*, 466 U.S. at 695 (emphasis added). *Wiggins v. Smith*, 539 U.S. 510 (2003), did not change that standard. A finding that at least one juror would have voted for a life sentence must, of necessity under *Strickland*, be a finding that all twelve jurors would have voted for a life sentence, because the reviewing court may not presume one juror was different from the others; it must presume the jury acted as one, reasonable, deliberative body. To hold otherwise would

7

eviscerate *Strickland* because it always can be said in any case that there might be one errant juror who would vote for leniency.

Because this Court will be required to dismiss under 28 U.S.C. §§ 2254(d) and (e) the claims which Gray presented to the Virginia Supreme Court, and because any new claims Gray might present will be procedurally barred from review, Gray cannot make the "reasonably necessary" showing under 18 U.S.C. § 3599(f) for funding of a mental health expert. Because the record, viewed in light of the forecasted evidence, would not entitle the petitioner to an evidentiary hearing on his claims and because the petitioner would not be able to win on the merits regardless of any experts' after-the-fact conclusions, Gray is not entitled to funding. At the very least, this Court should not consider such funding until after it resolves the respondent's motion to dismiss the petition.

## Conclusion

The Court must deny Gray's motion for funds to obtain a mental health expert.

Respectfully submitted,

LORETTA K. KELLY, WARDEN

By_____/s/_____
Matthew P. Dullaghan
Senior Assistant Attorney General
Virginia State Bar Number 22164
Attorney for Respondent
OFFICE OF THE ATTORNEY GENERAL
900 East Main Street
Richmond, Virginia  23219
Telephone:    (804) 786-4073
Facsimile:    (804) 786-0142
MDullaghan@oag.state.va.us

Certificate Of Service

I certify that on October 4, 2011, the foregoing document was electronically filed with the Clerk of Court using the CM/ECF System, which will send notice of such filing (NEF) to the following registered CM/ECF users:

Jonathan P. Sheldon, Esquire
CONNELL, SHELDON & FLOOD, PLC
100621 Jones Street, Suite 301A
Fairfax, Virginia  22030
JSheldon@csfdefense.com

Robert Lee, Esquire
VIRGINIA CAPITAL REPRESENTATION RESOURCE CENTER
2421 Ivy Road, Suite 301
Charlottesville, Virginia  22903
roblee@vcrrc.org

                                                       _____/s/_____
                                                       Matthew P. Dullaghan
                                                       Senior Assistant Attorney General
                                                       Virginia State Bar Number 22164
                                                      Attorney for Respondent
                                                      OFFICE OF THE ATTORNEY GENERAL
                                                      900 East Main Street
                                                      Richmond, Virginia  23219
                                                      Telephone:     (804) 786-4073
                                                      Facsimile:      (804) 786-0142
                                                      MDullaghan@oag.state.va.us