UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

RICKY JAVON GRAY,    )
            )
     Petitioner,   )
            )
    v.       )  Case No. 1:11-cv-630 (AJT/TCB)
            )
KEITH W. DAVIS, WARDEN,  )
Sussex I State Prison,    )
            )
     Respondent.  )
            )

## MEMORANDUM OPINION

Petitioner Ricky Javon Gray ("Gray" or "Petitioner") presents four claims in his Amended Petition for Habeas Corpus [Doc. No. 146]. This matter is before the Court on the Motion to Dismiss the Amended Petition [Doc. No. 152] of Respondent Keith W. Davis, Warden, Sussex I State Prison (the "Warden" or "Respondent").

### Factual Background and Procedural History

The facts pertaining to Gray's underlying offense conduct and the procedural history of the case is set forth in the Court's Memorandum Opinion dated April 27, 2012 [Doc. No. 68], which is incorporated herein by reference.

By Amended Order dated May 18, 2012 [Doc. No. 74], the Court dismissed Petitioner's Petition for a Writ of Habeas Corpus and certified two questions, the second of which was whether Petitioner was entitled to counsel in addition to his state habeas counsel for the purpose of assessing whether there existed any defaulted claims that could be asserted in federal habeas proceedings under the holding of *Martinez v. Ryan*, 132 S. Ct. 1309, 182 L. Ed. 2d 272 (2012). By Order dated June 7, 2013 [Doc. No. 91], the Fourth Circuit "conclude[d] that Gray was

1

entitled to the appointment of independent counsel in his federal habeas proceeding [for the purpose of assessing whether there existed any cognizable defaulted claims under the holding of the United States Supreme Court in *Martinez v. Ryan*]…and vacate[d] the judgment and remand[ed] for further proceedings, deferring consideration of his first claim." Doc. No. 91.[1]  As directed by the Fourth Circuit, such new counsel were to "vigorously examine and present if available potential claims of ineffective assistance" of counsel in his state habeas proceedings that could excuse otherwise defaulted claims of ineffective assistance of trial counsel, as set forth in *Martinez*." *Id.*

On July 3, 2013, this Court appointed independent counsel for Gray and granted Petitioner leave to file an amended petition for a writ of habeas corpus "based on any claims, not previously presented, which may be asserted based on the holding in *Martinez*." Doc. No. 94.  On July 24, 2013, Gray filed his Motion for the Appointment of Counsel [Doc. No. 96], requesting that the Court appoint additional independent counsel, which the Court granted by its Order dated August 2, 2013 [Doc. No. 102].  Subsequently, on August 20, 2013, Gray filed his Renewed Motion for Appointment of Mental Health Expert [Doc. No. 104] and Motion for Appointment of Investigators [Doc. No. 105], both of which this Court denied by its Orders dated August 28, 2013 [Doc. Nos. 112, 113]. Petitioner then filed his Motion for Appointment of Pharmacologist [Doc. No. 115] on September 6, 2013, requesting the appointment of Dr. Wilkie A. Wilson to assist in the investigation and presentation of a defense of voluntary intoxication, focusing on the effects of PCP on the human brain, and specifically on Petitioner's mental state at the time of the crime.  After hearing oral argument, the Court granted that motion in its Order dated September 20, 2013 [Doc. No. 120].  On September 27, 2013, Gray filed his Motion for Appointment of Investigator [Doc. No. 122], requesting that Stephanie Bouis, a clinical social worker and capital mitigation specialist be

---

[1] Gray's appeal was otherwise "held in abeyance on the remaining claim pending completion of proceedings on remand." Doc. No. 114.

appointed to further investigate the voluntary intoxication claim by "interview[ing] lay witnesses who observed Petitioner's substance abuse and symptoms of intoxication during the relevant time period." By Order dated October 7, 2013 [Doc. No. 132], the Court granted that motion. Gray then filed his Motion for Appointment of Neuropsychologist [Doc. No. 143] on November 1, 2013, requesting that Dr. Kristine M. Herfkens be appointed by this Court to assist Dr. Wilson in rendering his opinion, specifically to "answer the question of the extent to which organic brain damage may have exacerbated the impact of Petitioner's intoxication and impairment at the time of the crime." By Order dated November 8, 2013 [Doc. No. 139], the Court granted that motion. On December 16, 2013, Petitioner filed his Amended Petition for a Writ of Habeas Corpus [Doc. No. 146], in which he presents four claims:

(1) ineffective assistance of state trial counsel in failing to present evidence of Gray's voluntary intoxication at the time of the crime (Claim XI);

(2) ineffective assistance of state habeas counsel in failing to interview the jurors on the grounds that, had they done so, they would have found that Gray's conviction and death sentence were tainted by one juror's reliance on extraneous influences in violation of his constitutional rights (Claim XII);

(3) ineffective assistance of state trial counsel in failing to present in mitigation a complete picture of the physical, sexual, and emotional abuse perpetrated on Gray (Claim XIII); and

(4) cumulatively ineffective assistance of state trial counsel which was thus prejudicial (Claim XIV).

On January 31, 2014, the Warden filed his Rule 5 Answer and Motion to Dismiss the Amended Petition [Doc. No. 152]. On March 14, 2014, the Court heard oral argument, following which the Court took the Motion to Dismiss under advisement.

3

## Standard of Review under *Martinez*

Pursuant to the Fourth Circuit's mandate, this Court must consider any "potential claims of ineffective assistance" of counsel in Petitioner's state habeas proceedings that could excuse otherwise defaulted claims of ineffective assistance of trial counsel, as set forth in *Martinez*. *See* Doc. No. 91.

A claim is procedurally defaulted if a prisoner fails to abide by a state procedural rule, such that the claim is not properly presented in a state court proceeding. *Martinez v. Ryan*, 132 S. Ct. at 1316 (citing *Coleman v. Thompson*, 501 U.S. 722, 747–748, 111 S. Ct. 2546, 115 L. Ed. 2d 640 (1991); *Wainwright v. Sykes*, 433 U.S. 72, 84–85 (1977)). Generally, a procedural default may be forgiven, and thus a federal court may review the defaulted claim, only if a prisoner is able to show both "cause" for the default and "prejudice" from a violation of federal law. *See Wainwright,* 433 U.S. at 84; *Coleman*, 501 U.S. at 750. Under the *Wainwright/Coleman* test, errors on the part of defense counsel in the post-conviction proceedings do not qualify as "cause" to excuse a procedural default, thus barring such procedurally defaulted claims from being heard in federal courts. *Coleman*, 501 U.S. at 754. In *Martinez*, the Supreme Court adopted a "narrow exception" to the rule adopted in *Coleman*. *Martinez*, 132 S. Ct. at 1315. This "narrow exception" provides that "[i]nadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial." *Id.* The *Martinez* exception is an equitable, not a constitutional rule, and, as the Fourth Circuit noted in its Order remanding this case [Doc. No. 91], quoting *Trevino v. Thaler*, 133 S. Ct. 1911, 185 L. Ed. 2d 1044 (2013), a claim falls within the *Martinez* exception where:

> (1) the claim of 'ineffective assistance of trial counsel' was a 'substantial' claim; (2) the 'cause' consisted of there being 'no counsel' or only 'ineffective' counsel during the state collateral review proceeding; (3) the state collateral review proceeding was the 'initial' review proceeding in respect to the 'ineffective-assistance-of-trial-counsel claim'; and (4) state law *requires* that an 'ineffective

4

assistance of trial counsel [claim] . . . be raised in an initial-review collateral proceeding.'

*Tevino*, 133 S. Ct. at 1918 (quoting *Martinez*, 132 S. Ct. at 1318) (emphasis original).

Imbedded in this *Martinez* formulation are multiple unsettled issues.  With respect the "substantial claim" requirement, it is unclear how the facts are to be viewed for the purpose of determining whether a claim is "substantial," that is, whether a test akin to that applicable to summary judgment applies or whether the Court may weigh the evidence.  It is also unclear whether the "substantial claim" standard of proof, or a higher or lower standard, applies to the "cause" prong of the *Martinez* test that requires that state habeas counsel was "ineffective."  Likewise unclear are what "prejudice" showings are required, given that (1) within the context of a *Martinez* ineffective assistance of counsel ("IAC") claim, the *Strickland* standard applies to both whether trial counsel was ineffective (for the purpose of determining whether the IAC claim is "substantial") and also whether state habeas counsel was ineffective (for the purposes of determining whether the "cause" prong of the *Martinez* analysis is satisfied).  Unsettled in this regard is whether the *Strickland* prejudice prong applicable to the "cause" prong of the *Martinez* analysis is based on the prospects of a different result in the state court habeas proceedings or the trial court proceedings, or both.  It must also be remembered, the *Martinez* exception applies only to establishing the "cause" prong of the *Coleman* "cause and prejudice" test, so that it would appear that once the "cause" prong of the *Martinez* test is satisfied, a federal habeas petitioner must still satisfy the "prejudice" prong of the

*Wainwright* and *Coleman* test; and the question arises whether that showing of prejudice imposes any additional evidentiary showing.[2]

As to the requirement that a petitioner make a showing that his defaulted claim is "substantial," we know from *Martinez* that a claim is "substantial" if it has "some merit." *Martinez*, 132 S. Ct. at 1318-19. In adopting that standard, the Court in *Martinez* referenced generally the standards for issuing certificates of appealability, as set forth in *Miller–El v. Cockrell*, 537 U.S. 322, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003).[3] Stated otherwise, a claim is "insubstantial" if "it does not have any merit or is wholly without factual support." *Martinez*, 132 S. Ct. at 1319. Based on this explanation and reference in *Martinez*, it appears clear that the required showing of a "substantial claim" is simply a preliminary filter, with a standard of proof significantly lower than for success on the merits, used solely for determining whether the Court should proceed further to a final determination of the merits of the claim, with, as warranted, the

---

[2] Compounding the landscape further is that the Supreme Court has adopted somewhat different articulations of "prejudice" for the purposes of the *Strickland* standard and the *Wainwright/Coleman* standard. *Compare Strickland v. Washington*, 466 U.S. 668, 694, 104 S. Ct. 2052, 2068, 80 L. Ed. 2d 674 (1984) (a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome."); *with Murray v. Carrier*, 477 U.S. 478, 494, 106 S. Ct. 2639, 2648, 91 L. Ed. 2d 397 (1986) ("The habeas petitioner must show 'not merely that the errors at ... trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions.'") (quoting *U. S. v. Frady*, 456 U.S. 152, 170, 102 S. Ct. 1584, 1596, 71 L. Ed. 2d 816 (1982)).

[3] As the Supreme Court explained in *Miller-El*, "[a] petitioner makes a 'substantial showing'[for the purposes of a certificate of appealability] when he demonstrates that his petition involves issues which are debatable among jurists of reason, that another court could resolve the issues differently, or that the issues are adequate to deserve encouragement to proceed further." *Miller-El*, 537 U.S. at 336 (quoting *Slack v. McDaniel*, 529 U.S. 473, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000)). In determining whether a certificate of appealability should be issued, the Court is directed to conduct an "overview of the claims in the habeas petition and a general assessment of their merits." *Miller-El*, 537 U.S. at 336. However, a court should not decline to issue a certificate "merely because it believes the applicant will not demonstrate an entitlement to relief." *Id.* at 336-37.

development of a more extensive record or an evidentiary hearing. Nevertheless, the Court

concludes that in making that determination, a court may consider the weight and reliability of

the evidence presented. Based on the formulation in *Martinez*, and within the context of a

defaulted IAC claim, the Court also concludes that the "substantiality" showing requirement

applies to both prongs of the *Strickland* test applicable to whether state habeas counsel was

"ineffective." *See Clabourne v. Ryan*, 745 F.3d 361, 376 (9th Cir. 2014) (holding that, with

respect to a *Martinez* claim pertaining to the ineffectiveness of state habeas counsel, a petitioner

must make a "substantial" showing with respect to both the performance and the prejudice

prongs of the *Strickland* standard); *cf. Detrich v. Ryan*, 740 F.3d 1237, 1245-46 (9th Cir. 2013)

(en banc) (Fletcher, J., plurality) ("a prisoner need show only that his PCR [post-conviction

relief] counsel performed in a deficient manner" and "need not show actual prejudice resulting

from his PCR counsel's deficient performance, over and above the required showing that the trial

counsel IAC claim be "substantial" under the first *Martinez* requirement.").

  With respect to "prejudice," the Court concludes that Petitioner must also make the

required "substantiality" showing with respect to the probability of a different result (1) with

respect to trial court proceedings as to his trial counsel IAC claim; and (2) with respect to state

habeas proceedings as to his claim that state habeas counsel was "ineffective." Finally, the Court

concludes that the "prejudice" prong of the *Wainwright/Coleman* "cause and prejudice" test is

satisfied by a showing that the petitioner's underlying claim is a "substantial" one.[4] With these

---

[4] In reaching these conclusions, the Court has essentially adopted the position as stated in
*Clabourne v. Ryan*, 745 F.3d 362 (9th Cir. 2014). The Court has concluded that prejudice must
be shown in terms of a likely different result in state habeas proceedings in order to, among other
reasons, remove incentives for state habeas counsel to not raise issues in their state habeas
petitions, with the hope of avoiding any perceived unfair, limited or onerous restrictions on post-
conviction review and the development of a post-conviction record as well as the highly
deferential federal review of any state court findings of fact that would result from that process.

issues addressed, the Court will consider each of Petitioner's alleged *Martinez* claims set forth in his Amended Petition.

**Claim XI: Voluntary Intoxication**

Gray alleges his state trial counsel were ineffective for failing to present, at both the guilt and sentencing phases of his trial, evidence supporting the defense that he was so intoxicated at the time of the Harvey murders that he was incapable of deliberation and premeditation. Petitioner further alleges under *Martinez* that his state habeas counsel were ineffective in failing to assert this underlying IAC claim in state habeas proceedings. In order to make the required showing under *Martinez*, Gray must demonstrate that: (1) there was a "defaulted claim"; (2) the claim of ineffective assistance of trial counsel was a "substantial claim; and (2) there is "cause" for the default, in that that his state habeas counsel were "ineffective" under *Strickland*. *See Martinez*, 132 S. Ct. at 1315-1320.

As to Claim XI, based on Gray's alleged voluntary intoxication, the parties are in agreement that trial counsel failed to assert a defense of voluntary intoxication during the guilt phase, his state habeas counsel failed to assert the ineffectiveness of trial counsel on this basis, and to this extent, this claim of ineffectiveness of trial counsel is a "defaulted claim" cognizable under the "narrow exception" of *Martinez*. The parties appear to otherwise part company on all other issues associated with this claim under *Martinez,* including (1) whether Gray's IAC claim based on trial counsel's failure to raise the defense of voluntary intoxication during the guilt phase is a "substantial" claim and whether state habeas counsel was "ineffective" when it did not raise that IAC claim in state habeas proceedings; and (2) whether Gray's IAC claim based on trial counsel's failure to present Gray's voluntary intoxication in mitigation during the penalty phase is, in fact, a defaulted claim cognizable under *Martinez*, since trial counsel did raise with

8

the jury during the penalty phase Gray's drug use at the time of the murders, and state habeas counsel raised in state habeas proceedings trial counsel's ineffectiveness during the penalty phase based, in part, on how Gray's drug use was presented to the jury and the Supreme Court of Virginia ruled on that contention on the merits.

### A. Whether Gray's IAC Claim Based on Trial Counsel's Failure to Raise a Voluntary Intoxication Defense is a "Substantial Claim"

In order to establish that a claim of ineffective assistance by state trial counsel is "substantial," a "prisoner must demonstrate that the claim has some merit." *Martinez*, 132 S. Ct. at 1318.[5] This means that the claim has some legal and factual support. *Id.* at 1319. For this reason, the inquiry into whether a petitioner's IAC claim is "substantial" is inextricably bound up with whether he has made the necessary showing under the *Strickland* standard that (1) "counsel's performance was deficient," and (2) "that the deficiency prejudiced the defense." *Kelly*, 650 F.3d 477, 493 (2011) (quoting *Wiggins v. Smith*, 539 U.S. 510, 521, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003)); *see also Strickland v. Washington*, 466 U.S. 668, 687 (1984). For the purpose of obtaining final relief with respect to an IAC claim, this two-prong *Strickland* analysis imposes a "high bar" and courts must assess trial counsel's efforts with "scrupulous care, lest intrusive post-trial inquiry threaten the integrity of the very adversary process the right to counsel is meant to serve." *Kelly*, 650 F.3d at 493 (quoting *Harrington v. Richter*, 131 S. Ct. 770, 788, 178 L. Ed. 2d 624 (2011)).

---

[5] In explaining how courts are to review potential claims under *Martinez*, the Supreme Court explained: "When faced with the question whether there is cause for an apparent default, a State may answer that the ineffective-assistance-of-trial-counsel claim is insubstantial, i.e., it does not have any merit or that it is wholly without factual support, or that the attorney in the initial-review collateral proceeding did not perform below constitutional standards." *Martinez*, 132 S. Ct. at 1319. For this reason, the Court has first considered this prong of the *Martinez* analysis.

### 1. Performance of Trial Counsel under *Strickland*

The "performance prong" ultimately requires a showing that counsel's representation fell

below "an objective standard of reasonableness." *Wiggins*, 539 U.S. at 511; *Richardson v.*

*Branker*, 668 F.3d 128, 139 (4th Cir. 2012) (quoting *Strickland*, 466 U.S. at 687-88). In making

that determination, a court "must indulge a strong presumption that counsel's conduct falls within

the wide range of reasonable professional assistance." *Richardson*, 668 F.3d at 139 (quoting

*Strickland*, 466 U.S. at 689). In fact, Gray must show "that counsel made errors so serious that

counsel was not functioning as the counsel guaranteed ...by the Sixth Amendment." *Harrington*,

131 S.Ct. at 787 (internal quotation marks omitted) (citing *Strickland*, 466 U.S. at 687).

Importantly, the Court's deferential assessment of counsel's performance must "include [] a

context-dependent consideration of the challenged conduct as seen from counsel's perspective at

the time...." *Wiggins*, 539 U.S. at 523 (internal quotation marks omitted) (quoting *Strickland*,

466 U.S. at 688-89), *quoted in DeCastro v. Branker*, 642 F.3d 442, 450 (4th Cir. 2011). As the

Fourth Circuit has summarized the applicable law:

> ...[W]e must resist the temptation to "second-guess counsel's assistance after
> conviction or adverse sentence" and make "every effort ... to eliminate the
> distorting effects of hindsight." Indeed, we must review with "scrupulous care,
> lest intrusive post-trial inquiry threaten the integrity of the very adversary process
> the right to counsel is meant to serve."

*Decastro*, 642 F.3d at 450 (internal citations omitted) (quoting *Harrington*, 131 S. Ct. at 788);

*see also Strickland*, 466 U.S. at 689). These admonitions are particularly applicable where an

IAC claim is based on the trial strategy that trial counsel selected after reasonable investigation

and consideration:

> [t]here are... countless ways to provide effective assistance in any given case.
> Even the best criminal defense lawyers would not defend a particular client in the
> same way. Rare are the situations in which the wide latitude counsel must have
> been making tactical decisions will be limited to any one technique or

> approach…. Counsel was entitled to formulate a strategy that was reasonable at
> the time and to balance limited resources in accord with effective trial tactics and
> strategies.

*Harrington*, 131 S.Ct. at 788-89 (internal quotation marks and citation omitted), *quoted with*

*approval in Decastro*, 642 F.3d at 451.  Relief based on unsuccessful strategic choices is

particularly difficult to obtain:

> [S]trategic choices made after thorough investigation of law and facts relevant to
> plausible options are virtually unchallengeable; and strategic choices made after
> less than complete investigation are reasonable precisely to the extent that
> reasonable professional judgments support the limitations on investigation. In
> other words, counsel has a duty to make reasonable investigations or to make a
> reasonable decision that makes particular investigations unnecessary. In any
> ineffectiveness case, a particular decision not to investigate must be directly
> assessed for reasonableness in all the circumstances, applying a heavy measure of
> deference to counsel's judgments.

*Wiggins*, 539 U.S. at 521-22 (quoting *Strickland*, 466 U.S. at 690-691).  In the end, "…which

strategy might have been best is not the pertinent inquiry; instead, we ask whether the strategy

counsel chose was objectively reasonable." *Decastro*, 642 F.3d at 451.  With these standards for

granting final relief in mind, the Court has considered whether Gray has made a showing that his

IAC claim is a "substantial" claim.

Gray's trial counsel explained their choice to not present any evidence supporting a

voluntary intoxication defense as follows:

> We made a determination that any claim of intoxication by drug use was not the
> best defense available. Gray insisted repeatedly that PCP could not be to blame.
> He knew what he was doing. Any argument that Gray acted because of the
> influence of drugs was simply not supported by what the defendant told us. A
> defense of intoxication would detract from our sentencing evidence of sexual
> abuse.

MTD, Exhibit B, 8 ¶ 23.  The issue here reduces to whether Gray has demonstrated as

"substantial" his claim that trial counsel's affirmative, strategic decision not to present evidence

of voluntary intoxication was objectively deficient.

11

In his Amended Petition, Gray argues that his trial counsel had the reports of "three mental health experts who evaluated Gray [and] notified trial counsel of Gray's substance abuse and intoxication at the time of the crimes." Amend. Pet. ¶ 258. The first is by Dr. Evan Nelson, who issued a report prior to trial stating that, "Mr. Gray did admit that during most of these crimes he was voluntarily intoxicated to some degree on 'love boat,' street slang for marijuana laced with a substance" and that "he may very well have been voluntarily intoxicated." Nelson Report at 11, 12. The second expert mentioned by Petitioner is that of Dr. Bruce Cohen, who indicated that:

> Mr. Gray does appear to have been intoxicated with marijuana, phencyclidine (PCP), and likely ecstasy from the time that he drove from Pennsylvania to Virginia (on December 23, 2005) through the time of his arrest (and January 7, 2006). These chemical agents, particularly PCP, can significantly impair judgment and impulse control. Chronic users of PCP tend to describe feelings motivated to continue to use this drug despite an awareness of its adverse side effects due to its powerfully reinforcing psychological effects. These typically involve a combination of (1) feeling emotionally "numbed" (useful in blunting any feelings of sadness or anxiety) and (2) feeling strong, powerful, and/or invulnerable. Mr. Gray does describe having experienced such sensations in the context of his substance use, including during the period of time surrounding the present offenses.

Cohen Report at 4. Finally, Gray also told Dr. Mark Cunningham that he was using multiple drugs at the time of the capital offense. State Pet. App. at 462. There are also jail records from the staff psychiatrist at the Richmond City Jail, Dr. Richard Curtis, that indicate that during his incarceration at that facility, beginning on January 10, 2006, approximately 10 days after the Harvey murders, and continuing through at least January 24, 2006, Gray was hearing voices, suffering from hallucinations and displayed objective signs of psychosis, for which Dr. Curtis prescribed Risperdal, a known antipsychotic drug. Affidavit of Dr. Curtis at 13 ¶5. Gray also admitted to the Richmond Police that he was on PCP the day of the murders. Amend. Pet. ¶¶ 257, 260.

Based on this evidence, Gray argues that his trial counsel unreasonably failed to

investigate further and present evidence on Gray's PCP use and, for this reason, trial counsel's

strategic choices are not entitled to deference. *See State v. Johnson*, 143 Md. App. 173 (2002)

(ineffective assistance of counsel for failure to adequately investigate PCP induced psychosis);

*People v. Popoca*, 615 N.E.2d 778 (Ill. App. Ct. 1993) (ineffective assistance of counsel for

failing to interview paramedics and hospital personnel and prepare expert testimony to support a

defense of voluntary intoxication); *In re Sixto*, 744 P.2d 164 (Cal. 1989) (ineffective assistance

of counsel for failure to adequately investigate defendant's intoxication on alcohol and PCP).

Gray further claims that his counsel's ineffectiveness extended to simply accepting his

statements as expressions of legal responsibility without properly counseling him concerning

what legal significance his intoxication may have had, suggesting that Gray may have been

simply expressing remorse.[6]

In response, the Warden points to Dr. Evan Nelson's report, in which he reported that

Gray "insisted he was never so intoxicated that he felt it destroyed his ability to understand what

was happening." Doc. No. 107-2 at 11. Respondent also points to the statutory mandate issued

to Dr. Bruce Cohen, pursuant to Virginia Code § 19.2-264.3:1(C), that he opine as to "whether

there are any other factors in mitigation relating to the history or character of the defendant or the

defendant's mental condition at the time of the offense." Dr. Cohen subsequently reported that

Gray "denied that as a result of his drug use either that he was unaware of his actions at the time

---

[6] In this regard, Gray relies on Guideline 10.7 of the ABA Guidelines, which states that "the investigation regarding guilt should be conducted regardless of any admission or statement by the client concerning the facts of the alleged crime, or overwhelming evidence of guilt, or any statement by the client that evidence bearing upon guilt is not to be collected or presented." Amend. Pet. n. 3. He also points out that Guideline 10.7 has been "cited with approval by the United States Supreme Court in *Rompilla* [*v. Beard*, 545 U.S. 374 (2005)]; *Wiggins* [*v. Smith*, 539 U.S. 510 (2003)], and other cases...." *Id.*

of the present offenses or that he was experiencing psychotic symptoms (such as hallucinations or delusions) at the time of these offenses." Doc. No. 107-3 at 4.[7]

In evaluating whether Gray's IAC claim is "substantial," the Court must assess what information trial counsel had available to them, what additional investigation may have established, and what expert testimony they would have been in a position to present that Gray was voluntarily intoxicated to such an extent that it constituted a legal defense as to guilt or as mitigation. In this regard, there is no dispute that trial counsel were aware that Gray had ingested intoxicating substances around the time of the murders, but that Gray repeatedly denied, to both them and the appointed experts, that he was unaware of what he was doing as a result of the drugs. There is also no dispute that trial counsel was faced with Gray's multiple statements to law enforcement officials that reflected on their face detailed recollections of not only the Harvey murders but also the murder of his wife, which occurred in Pennsylvania approximately two months before the Harvey murders, and the Tucker family murders that occurred on the same day as the Harvey murders. Gray had also demonstrated the ability to engage in rather extensive travel during the period surrounding the Harvey murders, including from Pennsylvania to Northern Virginia, from Northern Virginia to Richmond, and finally from Richmond to Philadelphia, where he was arrested.

In *Reid v. True*, 349 F.3d 788 (4th Cir. 2003), the Fourth Circuit succinctly stated the standard for and effect of voluntary intoxication in the Commonwealth:

> Under Virginia law, voluntary intoxication does not excuse any crime. *See Wright v. Commonwealth*, 234 Va. 627, 363 S.E.2d 711 (1988). "However, when a person voluntarily becomes so intoxicated that he is incapable of deliberation or

---

[7] Submitted with Gray's Opposition to the present Motion is an affidavit from Dr. Nelson, in which Dr. Nelson states that he was "never appointed to evaluate whether Mr. Gray was so intoxicated that he lacked the capacity to form the intent to commit a premeditated murder" and that his report, as a result, did not contain such an opinion. Opp. Ex. A.

14

premeditation, he cannot commit a class of murder that requires proof of a deliberate and premeditated killing." *Id.* In determining whether the evidence supports a voluntary intoxication defense, Virginia courts look to the defendant's behavior before and after the offense. *See, e.g., Giarratano v. Commonwealth*, 220 Va. 1064, 266 S.E.2d 94, 99 (1980). Relevant behaviors include attempts to conceal the crime, *see id.* at 100 (noting that defendant killed second person in order to conceal first murder); a lapse of time between ingestion of intoxicants and the crime, *see Hedrick v. Warden*, 264 Va. 486, 570 S.E.2d 840, 851 (2002); whether the conduct of the defendant was "planned and purposeful," *id.*; and whether the defendant was able to engage in complex behaviors such as operating an automobile, *see Lilly v. Commonwealth*, 255 Va. 558, 499 S.E.2d 522, 536 (1998), rev'd on other grounds, 527 U.S. 116, 119 S.Ct. 1887, 144 L.Ed.2d 117 (1999).

*Reid* at 800.

The record reflects that trial counsel were aware of and considered Petitioner's drug use in consultation with the various experts. They requested, received and analyzed expert reports which spoke to Gray's drug use throughout his life, including around the time of the murders and consulted with attorney David Bruck of Washington and Lee School of Law, who recommended a pharmacologist. *See* Bruck Aff., SA at 35 ¶3. Counsel inquired of Gray about his drug use, as did the court-appointed experts who interviewed Gray, and counsel developed their trial strategy in light of the information they obtained from Gray and the appointed experts. Rather than neglecting to consider such a defense and rejecting it out of hand, trial counsel gathered the available information and made a tactical decision to not press such a defense or to use it in mitigation. There is no evidence that trial counsel labored under an inaccurate understanding of the applicable law, but rather concluded, based on everything they knew, that they would simply not be able to support, based on the facts and Gray's own admissions, a voluntary intoxication defense.[8] In that regard, counsel were aware that Petitioner had provided to the police detailed

---

[8] For this reason, the posture of this case is different than that presented in *Gray v. Branker*, 529 F.3d 220 (4th Cir. 2008), where "there was simply no consideration of whether a defense based on psychiatric evidence might be a strategy worth exploring." *Id.* at 231.

15

descriptions of his activities prior to, during and following the Harvey murders, including the

coordinated and horrific nature of Gray's crimes. *See Gray v. Com.*, 274 Va. 290, 295-298, 645

S.E.2d 448, 452-454 (2007), where the Virginia Supreme Court found during Gray's appeal,

based in part on Gray's detailed signed confession, that Gray entered the Harvey's home with a

deadly weapon, bound and gagged his victims, made an effort to conceal his crime by setting fire

to the house in which he had committed the murders, and then murdered one of his accomplices

ostensibly to limit the number of individuals who knew of the crime.

Petitioner argues that it was inherently unreasonable for his trial counsel to rely on his

statements that the drugs in his system did not prevent him from knowing and understanding

what he was doing.[9]  While Gray's statements could not reasonably end counsel's consideration

of Gray's drug use, and there is no evidence that it did, competent trial counsel could not ignore

or discount the operative, practical effect of those statements on any voluntary intoxication

defense; and it would have been foolhardy for trial counsel to simply ignore the fundamental

---

[9] In support of this position, Gray cites to *Rompilla v. Beard*, 545 U.S. 374 (2005); *Wiggins v. Smith*, 539 U.S. 510 (2003); and *Williams v. Taylor*, 529 U.S. 362 (2000). In *Rompilla*, the Supreme Court referred to the ABA Standards as a "guide to determining what is reasonable," in particular looking to 1 ABA Standards for Criminal Justice 4–4.1 (2d ed. 1982 Supp.) for the proposition that "The duty to investigate exists regardless of the accused's admissions or statements to the lawyer of facts constituting guilt." *Rompilla* at 387.  In that case, Petitioner's counsel had completely failed to examine a prior victim's testimony more than a day before sentencing and failed to look at any other materials in the file for the prior conviction. *Id.* at 383-387.  In *Wiggins*, the Supreme Court found it unreasonable for Wiggins' counsel to decide not to expand their investigation of petitioner's life history for mitigating evidence beyond the presentence investigation report and the department of social services records, because such lack of investigation fell short of prevailing professional standards.  539 U.S. at 524.  In *Williams*, the Supreme Court found that Williams' counsel had been ineffective because they did "not begin to prepare for [the guilt] phase of the proceeding until a week before the trial. They failed to conduct an investigation that would have uncovered extensive records graphically describing Williams' nightmarish childhood, not because of any strategic calculation but because they incorrectly thought that state law barred access to such records." 529 U.S. at 395. The Court does not find any of the cited cases to be comparable, on their facts, to those in this case.

contradiction that any reasonable fact finder would see between these statements and a defense that Gray was unable to form criminal intent based on voluntary intoxication. Moreover, given that the voluntary intoxication defense is, to a large degree, based on a defendant's inability to form the required intent at the time of the offense conduct, trial counsel could reasonably conclude that Gray's own assessment of his mental state at the time of the Harvey murders would likely be viewed by the jury as the most probative evidence, if not the only source of probative evidence, concerning whether or not he was aware of what he was doing at the time of the Harvey murders. Based on the evidentiary realities of the case, trial counsel could reasonably reject voluntary intoxication as a viable defense.

Nor is there any reason to conclude that trial counsel was deficient in failing to conduct some additional investigation into Gray's drug use or find additional experts. Gray had been appointed three experts during trial proceedings, none of whom was in a position, based on their evaluation and interviews with Gray, to provide the opinions that Petitioner claims were required. Moreover, the credibility of any helpful opinions along the lines that Gray now describes would have been compromised by his statements to those experts. It was for this reason that trial counsel was forced to use Dr. Lisak, who could, and did, provide helpful testimony during the sentencing phase, albeit hypothetically and without the benefit of actually evaluating Gray, but without exposing the jury to Gray's fundamentally inculpatory statements as to his mental state at the time of the Harvey murders. The record does not reflect what efforts, if any, were made to ascertain the exact nature, volume and timing of drug use relative to the Harvey murders, but there is nothing in the record that suggests that such information was available. In fact, to this day, there is no real information from which it could be reasonably determined to what extent Gray was affected by any drug use at the time of the Harvey

17

murders.[10]  At most, trial counsel was in a position to present through Gray's trial experts the

kinds of generalized opinions now offered by Gray's experts appointed in these proceedings -

that drugs such as PCP can have profound effects - but none of these experts were, or are now, in

a position to opine with any degree of certainty that Gray was in fact voluntarily intoxicated to

the extent required for a defense of voluntary intoxication at the time of the Harvey murders.  For

these reasons, trial counsel could reasonably conclude that a voluntary intoxication defense was

not the best defense and that "[a] defense of intoxication would detract from our sentencing

evidence of sexual abuse."  MTD, Exhibit B, 8 ¶ 23.  Likewise, based on all of the facts, and the

limited time and resources available, trial counsel's determination that additional investigation

into this issue was not in their client's best interests was a strategic choice that fell within the

broad range of permissible professional judgments.  These are precisely the types of decisions

counsel are required to make.  Under *Strickland*, counsel are given "wide latitude" in "making

tactical decisions" and this Court gives such decisions "a heavy measure of deference" as

required.  *Strickland* at 522, 589.  For all these reasons, the Court finds and concludes that

Petitioner has not shown that his claim that trial counsel was deficient in their representation

during the guilt phase is a "substantial" claim.

Nor has the Petitioner made such a showing with respect to the sentencing phase.

However, unlike Claim XI as it pertains to the guilt phase, there is a substantial question whether

Claim XI as it pertains to the sentencing phase is, in fact, a "defaulted claim."  In this regard,

state habeas counsel, in both state habeas proceedings and in his original petition in this Court,

---

[10] Significant in this regard is that this Court appointed an expert investigator to, among other
things, collect information from lay witnesses regarding what intoxicating substances Gray in
fact ingested and in what amounts around the time of the crime; and Petitioner has been unable
to proffer any such information to the Court materially beyond what was already presented to the
Virginia state courts.  *See* Doc. No. 132 (granting Gray's Motion for Appointment of
Investigator [Doc. No. 122]).

claimed that trial counsel was ineffective during the sentencing phase by, among other things,

not investigating and presenting evidence concerning Gray's drug use and how the jury should

view his moral culpability in light of that drug use.  For example, state habeas counsel

specifically argued to the Supreme Court of Virginia the following concerning trial counsel's

failure to present evidence concerning Gray's drug use:

> The prosecutor's presentation of [Gray's statement to police] [] also concealed
> from jurors that Gray told police that he did not remember details of the crimes
> because he was high on a combination of marijuana cigarettes dipped in PCP and
> ecstasy when the crimes were committed, that he spent many nights trying to
> recall answers to details of the crimes, that he did not remember what happened to
> each of the Harvey family members, that his memory was very fuzzy about what
> happened at the Harvey's and Tucker's homes, and that he had to ask police
> officers if any of the crime victims were black people. ... These facts would have
> raised reasonable suspicions in the minds of jurors about relying upon [Gray's]
> statement as a primary basis for determining relative culpability between
> Dandridge [Gray's accomplice] and Gray....
>
> ... Gray's account [in his statement] and the questionable reliability of the written
> statement based on [his accomplice's] statement also would have been supported
> by scientific evidence about the psychological effect of PCP use. Gray's inability
> to recall details of events while under the influence of PCP ("phencyclidine") can
> be explained by the anesthetic properties of the drug. PCP works like a
> dissociative anesthetic which has its primary effects on the brain's cortex and
> impairs the functioning of brain cells. The brain cells most impaired by PCP in
> humans are in the frontal cortex and hippocampus, areas required for learning and
> memory....When inhibited by PCP, these cells do not function and learning and
> memory shortage does not take place. An individual using PCP becomes
> amnestic, impairing both the ability to think at the time of intoxication and the
> ability to later recall the events.

State Pet. at 10 -12.  Approximately twenty pages of Gray's 50 page state habeas petition was

devoted to his Claim IX that trial counsel was ineffective at sentencing.  Within the context of

that claim, state habeas counsel argued:

> At the sentencing phase of trial, counsel presented the limited testimony of three
> lay witnesses, and three experts, none of whom explained how Gray's life
> experiences affected his personal and moral development. Counsel failed to
> present testimony from 20 easily available witnesses who could provide a
> comprehensive and accurate picture of Gray's life. Counsel failed to present

easily available, objective documentary evidence corroborating testimony and other evidence. The appointed a defense expert could have used this evidence to explain the effect of Gray's life experiences on his personal and moral development. By failing to recognize, develop and present several vital components of this evidence, counsel failed to provide Gray with effective assistance of counsel.

For example, counsel failed to give jurors and accurate context to Gray's history, behavior and opportunities because they did not present accurate evidence of the poverty, chaos, neglect and toxic environment (including consistent exposure to drugs and violence in the community) in which Gray's development occurred....

Counsel for Gray presented the fact that Gray used drugs growing up, and at the time of the crime, and the jury heard about Gray's to drug convictions. There was abundant additional testimony and documentary evidence available that Gray was addicted to drugs and alcohol, including PCP, his entire life, as a child, and as an adult.

Without expert testimony to explain what precipitated the drug use and the impact of the drug use on the defendant's moral culpability and behavior, the prosecution attacked Gray's failure to show any connection between physical and sexual abuse he suffered and his drug-behavior. Prosecutors claimed the Gray's involvement with drugs was not related to his prior abuse and trauma, but the product of greed....The presentation of drug use without expert testimony was ineffective assistance.

*Id.* at 28-29, 41 (internal citations omitted). State habeas counsel also argued concerning the lack

of needed expert testimony to link, among other things, Gray's use of drugs to his behavior and

moral culpability:

This [lack of needed expert opinions regarding mitigating evidence such as Gray's background and drug use from the experts whose reports were included at the sentencing phase] left Gray's limited, but potentially powerful – though incomplete – evidence of sexual abuse and drug use open to misunderstanding and misinterpretation. Indeed the prosecution summarized the lack of expert mental health testimony by arguing that "[t]hey have absolutely no explanation for Ricky Gray did."...

[Dr.] Cunningham could have provided expert testimony on Gray's use of PCP and other drugs at the time of the offense, to show how studies link such use individuals such as great a violent behavior and moral responsibility.

*Id.* at 45-46, 48.

In his original Petition in this Court, state habeas counsel raised the same Claim IX as presented in state proceedings and also attacked the determination by the Supreme Court of Virginia that his IAC claim satisfied neither the "performance" nor the "prejudice" prong of the *Strickland* test. *See* Doc. No. 18, Claim IX at 79-97. Gray's Claim XI differs from his previously asserted Claim IX only in that it is framed exclusively within the context of a voluntary intoxication defense and the effect such a presentation would have likely had on a jury who found a death sentence warranted only on the grounds of "vileness" and only as to the two Harvey children.

The different formulations notwithstanding, the Court finds that Petitioner's claim XI is, in substance, essentially the same as his previously asserted Claim IX to the extent that it relates to the sentencing phase and is therefore not a defaulted claim. Alternatively, the Court concludes that, even were this Claim XI deemed a defaulted claim with respect to the sentencing phase, for the reasons stated above with respect to the guilt phase, the Court finds that Petitioner has not made an adequate showing that his claim that trial counsel was deficient in their performance during the sentencing phase is a "substantial" one.

### 2. Prejudice Resulting from Trial Counsel's Performance under *Strickland*

Assuming that a petitioner can satisfy the "difficult standard" of the performance prong, the petitioner still must show that his claim of "prejudice" is a substantial one. *See Richardson v. Branker,* 668 F.3d 128, 139-140 (4th Cir. 2012) ("...to obtain relief the petitioner must also show that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'") (quoting *Strickland,* 466 U.S. at 694). A demonstration of prejudice sufficient to warrant final relief requires a *substantial*, not just

conceivable, likelihood of a different result. *Id.* (quoting *Harrington,* 131 S.Ct. at 792) (emphasis in opinion). *See also Kelly*, 650 F.3d at 493 ("the prejudice inquiry centers on whether there is a reasonable probability that, absent [counsel's] errors, the sentencer... would have concluded that the balance of aggravating and mitigating circumstances did not warrant death.") (quoting *Williams v. Ozmint*, 494 F.3d 478, 484 (4th Cir. 2007) (internal quotations omitted); *see also Wiggins v. Smith*, 539 U.S. 510, 537 (2003) (finding that the prejudice prong is met if "there is a reasonable probability that at least one juror would have struck a different balance."). Petitioner must therefore show that his claim of prejudice for the purposes of his *Martinez* claims is "substantial" with respect to that high standard applicable to any final relief. For the above reasons stated with respect to the "performance" prong of the *Strickland* analysis for the purposes of Petitioner's substantiality showing as to Petitioner's trial counsel IAC claim, the Court concludes that Gray has failed to make the required showing of "prejudice" under *Strickland* either as to the guilt or sentencing phase.

In reaching this conclusion as to "prejudice," the Court has considered the affidavits of the court-appointed experts.[11] None of that evidence is sufficient to support a finding that Gray's

---

[11] In support of his prejudice position, Gray provides the affidavit of Dr. Wilkie Wilson and Dr. Herfkens, appointed by this Court. Dr. Wilkie Wilson states:

> It is my opinion that Mr. Gray was under the influence of PCP at the time of these crimes and that the use of PCP had a very significant impact on his behavior at the time. It is further my opinion that the effects of PCP on his brain almost certainly caused him to engage in violence that he might not otherwise have exhibited.

Wilson Aff. (Dec. 9, 2013), SA at 11 ¶41. Gray also points to Dr. Wilson's description of the effects of PCP on the brain and the fact that PCP "is well known as a drug associated with extreme violence." *Id.* at 7 ¶12.

In her Report, Dr. Herfkens opines that:

claim is "substantial" with respect to the "prejudice" prong.  Given the lack of specific evidence

concerning what drugs, in what amounts, were influencing Gray at the time of the Harvey

murders, there is, first, a substantial question whether these experts' opinions, as expressed in

their affidavits, would have been admissible at trial during the guilt phase.  The Court recognizes

that trial counsel may have been able to elicit these types of opinions from the trial experts at the

penalty phase, but any favorable testimony, including testimony that may have related to the

issue of "vileness," would have likely been substantially undermined by Gray's statements to

those experts concerning the actual impact any drug use had on him, as well as his actions

before, during and after the Harvey murders.  For these reasons, and even assuming that trial

counsel's performance was deficient, Petitioner has not made a sufficient showing that there was

a "substantial likelihood" that the jury would have recommended life in prison instead of the

death penalty, had trial counsel proceeded as Gray now claims was required.

---

> Based on these test results, it is my opinion that in a chaotic situation, even when not intoxicated, there is a reasonable likelihood that Mr. Gray would experience significant impairment, such as focusing on non-relevant details, basing decisions on incomplete or incorrect information, and reacting impulsively.
>
> In addition, Mr. Gray's deficits would have been much more severe at the time of the crime as the result of acute intoxication and stress. PCP intoxication has profound behavioral implications, including irrational violence, psychosis, mania, and an absence of physical pain. PCP also dramatically affects cognition, with effects including impaired social cognition, working memory/attention, spatial processing, and cognitive flexibility, all of which are associated with frontal system functioning. The combination of PCP intoxication and mild cognitive impairment, also associated with frontal system functioning, would likely have caused marked disinhibition and devastatingly poor problem solving, which would have been further exacerbated by his impaired ability to deal with stress as the result of childhood trauma.

Herfkens Aff., SA at 3, ¶ 15, and 4, ¶ 17.

For the above reasons, the Court finds and concludes that Petitioner's claim of ineffective assistance of trial counsel is not "substantial" within the meaning of *Martinez*.

### B. The "Cause" Prong of *Martinez* as to Petitioner's Trial IAC Claim Based on Failure to Assert Voluntary Intoxication as a Defense.

Petitioner alleges as "cause" for his defaulted Claim XI that state habeas counsel was ineffective in not claiming that trial counsel were ineffective by not asserting Gray's voluntary intoxication either at the guilt or penalty phase of the trial.

### 1. Performance of State Habeas Counsel under *Strickland*

In his Amended Petition, Gray argues that state habeas counsel were "ineffective" because, by their own admission, they never filed or considered filing Claim XI. Amend. Pet. ¶ 255 ("State habeas counsel failed to even consider raising this claim, despite being aware of evidence supporting it....[and] State habeas counsel have acknowledged that they have no strategic explanation for their failure to investigate and raise this claim.") (citing Sheldon Aff. SA at 38 ¶5; Lee Aff. SA at 31-33 ¶¶4-6). As discussed above, trial counsel were faced with limited and difficult choices, and the strategic choices they made cannot be said to have been unreasonable under the circumstances. For that reason, the Court cannot conclude that state habeas counsel, when faced with the circumstances of this case, would have been deficient had they affirmatively decided not to add an eleventh claim in Gray's state habeas petition based on a voluntary intoxication defense, particularly when a large portion of his state habeas petition presented some of the same points and issues that would have been presented in connection with such a claim, but without the difficult proof issues associated with that defense. *See Harrington*, 131 S. Ct. at 788 (providing for a doubly heavy burden under § 2254(d) and *Strickland* to show deficient performance in the habeas context). Nevertheless, the Court recognizes that state habeas counsel claims they never considered such a claim, and for that reason, the Court will

24

assume, without deciding, that Petitioner has made a sufficient "substantiality" showing that state

habeas counsel's performance was deficient under *Strickland* for the purposes of the "cause"

prong of the *Martinez* analysis and will consider whether this assumed failure on the part of

Gray's highly experienced state habeas counsel caused any prejudice.[12]

### 2. Prejudice Resulting from State Habeas Counsel's Performance under *Strickland*

In assessing prejudice, the Court must consider whether the outcome of state habeas

proceedings would have been any different had Claim XI been asserted in those proceedings. As

discussed above, the Virginia Supreme Court saw no merit in Gray's IAC claims, including those

predicated on a failure to effectively present evidence of drug use; and the Court concludes that

there is no reason to think that the Virginia Supreme Court would have viewed an explicit

voluntary intoxication defense any differently. *See e.g.*, *Gray v. Warden*, 281 Va. 303, at 306-07

(determining that "despite his statement that he was on PCP the day of the murders, petitioner

assured counsel that 'PCP could not be to blame' as petitioner 'knew what he was doing.'

Counsel made a tactical decision not to try to blame petitioner's actions on his use of drugs

because counsel decided that a defense of intoxication would detract from the best defense at

sentencing, which would be to focus on the abuse petitioner suffered as a child."); *see also Gray*

*v. Com.*, 274 Va. 290, 298 (finding on direct appeal that "Gray described in detail how he and

Dandridge entered the Harveys' home and attacked the Harveys."); *and Gray v. Warden*, 281 Va.

303, 306-307 (finding during its state habeas review that "despite [Gray's] statement that he was

on PCP the day of the murders, petitioner assured counsel that 'PCP could not be to blame' as

---

[12] Gray points to that disclaimer as conclusive proof of deficient performance, but given the exhaustive effort that state habeas counsel have devoted to post-conviction proceedings, their failure to consider a claim for relief based on trial counsel's failure to assert a voluntary intoxication defense can be viewed as highly probative of how competent habeas counsel would have acted under the particular circumstances of this case.

petitioner 'knew what he was doing.' Counsel made a tactical decision not to try to blame

petitioner's actions on his use of drugs because counsel decided that a defense of intoxication

would detract from the best defense at sentencing, which would be to focus on the abuse

petitioner suffered as a child."); *and* Doc. No. 68 at 18-19 (referencing the state court's holding

that Gray's counsel's "failure to investigate the effects of PCP on his memory, which effects

would have called into question the statement that Gray gave to the police, satisfied neither the

'performance' nor the 'prejudice' prong of *Strickland*.").

For these reasons, Petitioner has failed to carry his burden to show that he suffered

prejudice resulting from state habeas counsel's failure to present the instant claim to the Virginia

Supreme Court.

## Claim XII: Juror's Consideration of Extrinsic Evidence

Petitioner claims that state habeas counsel's failure to assert a claim that a trial juror was

subjected to outside influences during his deliberations constituted ineffective assistance of

counsel. *See* Amend. Pet. at 26-30. Here, however, Petitioner is not claiming that either trial

counsel or counsel during his direct appeal were ineffective in not asserting this Claim XII, but

rather, that state habeas counsel was ineffective. This claim is therefore not a defaulted claim

addressable under *Martinez*. First, the underlying issue, improper jury influence, is an issue that

procedurally could have been raised on direct appeal, and state habeas proceedings were not

Petitioner's first procedural opportunity to raise that claim. It is therefore a defaulted claim that

is outside the scope of *Martinez*. *See Martinez*, 132 S.Ct. 1309, 1315 (the narrow equitable

exception applies only to claims assertable for the first time in post-conviction initial review

collateral proceedings). For that reason, this Court's ability to review that claim is governed by

the "cause and prejudice" rule, as adopted in *Wainwright* and *Coleman*, under which the

negligence of state habeas counsel cannot constitute "cause." *See Coleman*, 501 U.S. 722, 754

("Attorney ignorance or inadvertence is not 'cause' because the attorney is the petitioner's agent

when acting, or failing to act, in furtherance of the litigation, and the petitioner must 'bear the

risk of attorney error.") (quoting *Murray v. Carrier*, 477 U.S. 478, 488). For these reasons,

Petitioner has failed to make the required showing under *Martinez* and this Court may not review

this claim XII.[13]

### Claim XIII: Inadequate Mitigation Investigation

Petitioner's next claim is that trial counsel were ineffective in failing to conduct an

adequate mitigation investigation and that state habeas counsel were ineffective when they failed

to assert that claim in state habeas proceedings. In particular, Petitioner argues that, due to the

ineffectiveness of state habeas counsel, the state court was prevented from considering critical

information set forth in new affidavits filed in these proceedings. The particular mitigation

evidence that Petitioner claims should have been presented includes that which would provide a

"complete picture of the physical, sexual, and emotional abuse perpetrated on Gray; the

profoundly chaotic and dysfunctional environment in which he was raised; and his father's abuse

of numerous family members in addition to Gray himself." Amend. Pet. ¶ 293.

Trial counsel did present mitigation evidence concerning Gray's history of abuse at the

sentencing phase and both the Virginia Supreme Court in its habeas review and this Court

previously considered and dismissed Petitioner's Claim IX (in both the state petition and original

federal petition) based on the scope and nature of that mitigation evidence. *See* State Pet. at 28-

49; *and see Gray v. Warden*, 281 Va. 303, 315-319 ("Petitioner contends that counsel failed to

---

[13] At the hearing , Petitioner appeared to concede that this claim does not fall within the current scope of *Martinez*, as currently applied, but argues that "the reasoning of *Martinez* applies equally" to this claim since a prisoner would need effective assistance to bring a claim of juror misconduct and because such a claim is a fundamental constitutional claim. .

present evidence of the 'poverty, chaos, neglect and toxic environment' in which petitioner was

raised.");  *see also* Doc. Nos. 18 at 79-97, 68 at 32-38.  In particular, this Court indicated that the

following mitigation evidence was put before the jury:

> Gray's counsel offered mitigation evidence. Gray's mother, Barbara Moten, testified to Gray's abusive childhood. *Id.* at 300. She testified that his father, Ellsworth, spanked him with a "horse strap" and otherwise beat him when the school reported Gray had misbehaved, when he wet the bed, and when Gray's siblings blamed him for things that happened around the house. *Id.* When Gray's mother had to move because of her job with the Army, Gray, then age nine, stayed with Ellsworth, who became a cocaine addict while Gray's mother was gone. *Id*; J.A. 1506-07. Ellsworth's other son and Gray's halfbrother, Fitzgerald, sexually abused Gray during this time period. *Gray I*, 214 Va. at 301. Gray's sister, Ava, testified about "repeated instances of sexual abuse upon her and Gray by Fitzgerald," with Gray "being victimized by Fitzgerald when he was only four years old." *Id.* Ava described the molestations as "a regular thing" over the course of seven years. *Id.* Ava also testified that Gray turned to using drugs, specifically, marijuana, cocaine, and PCP, when he was just thirteen years old. *Id.*
>
> Gray also presented the testimony of Dr. David Lisak, a psychologist and expert on the relationship between childhood abuse and later violent behavior. *Id.* Dr. Lisak opined generally, via video deposition, on the effects of early childhood abuse, and although he did not personally examine Gray, Dr. Lisak opined on the possible effects on Gray of his childhood experiences, as described to him by Gray's counsel. *See* State Pet. App. 354-69. Gray also presented the opinions of Dr. Mark Cunningham, a clinical and forensic psychologist, who testified that Gray would make a positive adjustment in prison, free from serious violence, pointing out that Gray had earned his GED during a previous period of incarceration. *Gray1*, 214 Va. at 301.

Doc. No. 68 at 5-6.  The Court also declined to consider the affidavits submitted in support of

Claim IX, citing *Cullen v. Pinholster*, 131 S.Ct. 1388, 1398 (2011).  In short, trial counsel

investigated and presented to the jury Petitioner's past abuse in mitigation, and trial counsel's

performance in that regard was reviewed during state habeas review.  This claim was also

presented to this Court in Petitioner's first federal Petition also as Claim IX.  This claim has

therefore not been procedurally defaulted and the merits of the claim as a basis for habeas relief

have already been adjudicated by both state and federal court.

**Claim XIV: Cumulative Nature of Trial Counsel's Deficient Performance**

Petitioner asserts that he was prejudiced by the combined errors of trial counsel, and that there is a reasonable probability that, absent the cumulative effect of these errors, the outcome of Petitioner's case would have been different, citing for support *United States v. Russell*, 34 F. App'x 927 (4th Cir. 2002) (finding that "cumulative error analysis applies where there are two or more actual errors; it does not apply to the cumulative effect of non-errors") (citing *Moore v. Reynolds*, 153 F.3d 1086, 1113 (10th Cir.1998)). However, IAC claims must be assessed individually, not collectively. *See Fisher v. Angelone*, 163 F.3d 835, 852 (4th Cir. 1998) ("it has long been the practice of this Court individually to assess claims under *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)...To the extent this Court has not specifically stated that ineffective assistance of counsel claims, like claims of trial court error, must be reviewed individually, rather than collectively, we do so now."). Moreover, "legitimate cumulative-error analysis evaluates only the effect of matters actually determined to be constitutional error, not the cumulative effect of all of counsel's actions deemed deficient." *Id.*, 163 F.3d at n. 9. As the Court has concluded that none of Gary's claims have merit, no cumulative analysis is necessary; and no cumulative analysis would therefore result in a finding of error or prejudice.

## Conclusion

For the reasons stated above, the Court finds and concludes that Petitioner has presented no claims that would afford any relief under *Martinez v. Ryan*, 132 S. Ct. 1309 (2012). Respondent's Motion to Dismiss [Doc. No. 152] will therefore be granted and Petitioner's Amended Petition for a Writ of Habeas Corpus [Doc, No. 146] will be dismissed.

An appropriate Order will issue.

The Clerk is directed to forward copies of this Order to all counsel of record.

_____
/s/
Anthony J. Trenga
United States District Judge

Alexandria, Virginia
May 13, 2014